IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DIVISION

| | |
|---|---|
| RAPHAEL WILLIAMS § | |
| § | |
| *Plaintiff,* § | 5:24-CV-01056-FB-RBF |
| § | |
| v. § | |
| § | |
| FRANK BISIGNANO, Commissioner of § | |
| Social Security[1] § | |
| *Defendant.* § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiff Raphael Williams' request for judicial review of the administrative denial of disability insurance benefits under Title II of the Social Security Act. This action was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b), Rule 1(h) of Appendix C to the Local Rules and the docket management order entered on October 8, 2019, in the San Antonio Division of the Western District of Texas. This Court has jurisdiction to review a final decision of the Social Security Administration, see 42 U.S.C. § 405(g), and authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

For the reasons stated herein, the Court should **REVERSE** the Commissioner's decision and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

## Factual and Procedural Background

Williams sought benefits based on a variety of both physical and mental impairments. For present purposes, it is sufficient to discuss only the facts relevant to this appeal, which pertains solely to the ALJ's evaluation of Williams' mental impairments.

Williams filed an application for a period of disability insurance benefits on June 26, 2022, alleging a disability onset date of May 25, 2021. Dkt. No. 5 ("Tr.") 215-16. Williams alleged disability due to post-traumatic stress disorder (PTSD), obstructive sleep apnea, tinnitus, degenerative arthritis, lumbar spine, bilateral pes planus, and plantar fasciitis. *Id.* 274. Williams' claim was initially denied, *id.* 82-86, and again following his request for reconsideration, *id.* 99-102.

Williams requested and received a hearing, after which the Administrative Law Judge (ALJ) denied Williams' application. *Id.* 7-21. Per regulations, the ALJ moved through the required five-step sequential analysis that considers the following:

> (1) whether the claimant is engaged in substantial gainful activity, (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment meets or equals one of the listings in the relevant regulations, (4) whether the claimant can still do past relevant work, and (5) whether the impairment prevents the claimant from doing any relevant work.

*Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). Initially, the ALJ found that Williams met the insured-status requirements of the Social Security Act. Tr. 12. Then, moving to the sequential analysis, the ALJ began at step one with a finding that Williams hadn't engaged in substantial gainful activity since the alleged disability onset date of May 25, 2021. *Id.* At step two, the ALJ found Williams has severe impairments of degenerative disc disease lumbar spine, degenerative

joint disease right shoulder, plantar fasciitis, obstructive sleep apnea, major depressive disorder, anxiety disorder, unspecified psychotic disorder, and PTSD. *Id.*

At step three, the ALJ found that none of Williams' impairments met or medically equaled the severity of one of the listed impairments in the applicable Social Security regulations. *Id.* 13. Before reaching step four of the analysis, the ALJ found that Williams has a residual functional capacity to perform the following modified range of light work as defined in 20 CFR 404.1567(b):

> Limited to occasional stooping, kneeling, crouching, crawling, climbing, and frequent reaching in all directions. He can understand, carry out and remember simple instructions, make simple decisions, can perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota, can interact occasionally with supervisors and co-workers but can have no contact with the public, and can respond appropriately to occasional changes in routine work setting.

*Id.* 14-15.

At step four after considering the residual functional capacity and the testimony of the vocational expert, the ALJ determined that Williams was unable to perform his past relevant work as a criminal investigator (DOT #375.167-042) and deputy sheriff (DOT #377.263-010). *Id.* 19. At step 5, after considering the testimony of the vocational expert, the ALJ determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as routing clerk (DOT #222.687-022), electronics worker (DOT # 726.687-010), and office helper (DOT #239.567-010). *Id.* 20-21. Accordingly, the ALJ determined that Williams was not disabled for the purposes of the Act and therefore was not entitled to receive benefits. *Id.* 21.

The Appeals Council subsequently denied Williams' request for review. *Id.* 1-6. Accordingly, on September 19, 2024, after exhausting all available administrative remedies, Williams filed for judicial review. Dkt. No. 1.

Analysis

Williams raises two points of error regarding the ALJ's assessment of his mental impairments. First, Williams claims that the ALJ reversibly erred in crafting a residual functional capacity to account for Plaintiff's social limitations, difficulties in concentration, persistence, and pace, and inability to adapt and manage. Second, Williams urges that the ALJ's subjective symptom analysis was not supported, as the ALJ relied on his lay interpretation of objective evidence. Williams asserts that each error independently warrants reversal. *See* Dkt. Nos. 7 (Claimant's Brief, "Brief"), 8 (Commissioner's Brief, "Resp."), & 9 (Claimant's Reply, "Reply").

### A.     Familiar Standards of Review Govern.

When reviewing the denial of social security benefits, the Court considers only whether "the final decision is supported by substantial evidence" and "the Commissioner used the proper legal standards to evaluate the evidence." *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation and internal quotations omitted).

The Court "may affirm only on the grounds" provided by the ALJ, *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citation omitted), and may not reweigh evidence, as "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve," *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Reversal is warranted only if an error was harmful. *Keel*, 986 F.3d at 556. "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Id*.

> **B.      The ALJ Reversibly Erred by Failing to Explain the Reasons for Partially Rejecting Two Medical Opinions.**

The Court agrees with Williams that the ALJ reversibly erred. In particular, two state agency consultants offered opinions that contained conclusions not squarely in line with the ALJ's ultimate residual-functional-capacity assessment. Under SSR 96-8p, if the residual-functional-capacity assessment "conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Moreover, the ALJ may not "pick and choose" only the evidence supporting the ALJ's conclusions. *Loza v. Apfel*, 219 F.3d 378, 393-94 (5th Cir. 2000). The ALJ's decision violates these two concepts.

Two state agency consultants, as mentioned, provided opinions that don't line up with the ALJ's residual-functional-capacity assessment. State agency psychological consultant Dr. Linette Castillo, PsyD, found Willaims

> could understand and remember simple instructions; may [ ] need to work in an environment with minimal social interaction; and would find it moderately difficult to react/adapt appropriately to changes in the work environment.

Tr. 18. And state agency psychological consultant Kevin Ragsdale, PhD, found Williams

> could comprehend and memorize 1-3 step job instructions without significant difficulty; could focus on and perform slower-paced SRTs with nominal social demands without special supervision and adhere to a standard work schedule; could behave in accordance with general social conventions during brief, task-specific interactions/conversations with customers, coworkers, and supervisors; and could operate in a goal-oriented fashion, appreciate an employer's safety guidelines, secure transportation to a jobsite, and adjust to straightforward, minor modifications in job duties and a work schedule.

*Id*.

The ALJ found these two opinions "generally persuasive." Specifically, the ALJ found as to these two opinions that they

> are supported by review of treatment records, containing reports of symptoms and mental status examination findings. The opinions are consistent with evidence of

>mostly normal examinations that show intact cognitive function, and improved social function with appropriate medication management. The limitations also consider the claimant's psychiatric history and ongoing reports of symptoms of depression, trauma, and hallucinations.

*Id*.

But in contrast with the conclusions reached in these opinions, the residual-functional-capacity assessment concluded that Williams can perform a range of light work as defined in 20 CFR 404.1567(b), with the following limitations:

>Limited to occasional stooping, kneeling, crouching, crawling, climbing, and frequent reaching in all directions. He can understand, carry out and remember simple instructions, make simple decisions, can perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota, can interact occasionally with supervisors and co-workers but can have no contact with the public, and can respond appropriately to occasional changes in routine work setting.

*Id.* 14-15. Missing from the residual-functional-capacity assessment but included in the "generally persuasive" medical opinions are limits restricting Williams to minimal social interaction, a non-confrontational supervisor, and accounting for his difficulty adapting to change and sustaining pace throughout the workday. Of particular concern is the lack of any limit to Williams' ability to sustain work, or any explanation for why that topic was not addressed in the residual-functional-capacity assessment. The Court notes that the ALJ questioned the vocational expert on the topic but then declined to adopt a restriction for it or explain why one wasn't incorporated into the residual functional capacity. *Id.* 49-50.

The Court is unpersuaded by the Commissioner's argument that because the ALJ is not required to adopt a state agency consultant's opinion verbatim, the ALJ was at liberty to find the consultants' opinions here "generally persuasive" but not further explain why limitations included in those opinions weren't adopted in the residual functional capacity. While the Court agrees that the ALJ's opinion should be read as a whole, the Court must still be able to review

and understand the ALJ's decision. There must be a logical connection between the decision's analysis and the residual functional capacity ultimately adopted. Here, references to physical activity, like frequent working out, and the other arguments proffered by the Commissioner in this Court do not connect the dots between "persuasive" medical opinions including limitations and a residual-functional-capacity assessment without commensurate limitations. *See* Resp. at 7.

The error here is not harmless because limitations on maintaining pace could be work preclusive in the circumstances of this case. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (noting, "where the rights of individuals are affected, [the ALJ] must follow [Agency] procedures, even where the internal procedures are more rigorous than otherwise would be required"); *Keel v. Saul*, 986 F.3d at 556 (error is harmless only when it is "inconceivable that a different administrative conclusion would have been reached . . . if the ALJ did not err"); *see* Tr. 49-50 (vocational expert affirmed there would be no jobs in the national economy for a hypothetical individual with claimant's RFC *and* one of the following: who required two or more unexcused or unscheduled absences per month consistently *or* who required two or more 10- to 15-minute breaks each day, in addition to regularly scheduled breaks *or* who was off task more than 10% of the workday, in addition to regularly scheduled breaks).

Because the ALJ's decision is based on what is said, not *post hoc* rationalizations, the decision here must be reversed for further consideration at the agency level. And in this case, the remand should, to the extent possible, consider all of the claimant's arguments on appeal, as it is likely those arguments will merely be re-raised should only some but not all of them receive the full attention of the ALJ on remand.

**Conclusion and Recommendation**

For these reasons, the Court should **REVERSE** the Commissioner's decision and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **IT IS SO ORDERED**.

SIGNED this 29th day of August, 2025.

_____
RICHARD B.  FARRER
UNITED STATES MAGISTRATE JUDGE